IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STEPHANIE SANDERS, R.N. | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-13-CV-250-XR |
| | § | |
| CHRISTUS SANTA ROSA PASC, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

On this day came on to be considered Defendant's motion for summary judgment (docket no. 40). The motion is denied.

### Background

Plaintiff originally filed this lawsuit in state court. Defendants timely removed.

Plaintiff was employed at Christus Santa Rosa and resumed her employment at Christus Santa Rosa Physicians Ambulatory Surgery Centers in October 2010 as a recovery room registered nurse. In April 2011, she was transferred to surgical pre-op nurse. Defendant Dr. Michael Decherd is a surgeon with privileges to perform surgeries at Christus Santa Rosa's facility.

Plaintiff alleges that from early 2011 through the summer of 2012, Michael E. Decherd, M.D. "made continued and escalating verbal comments of a sexual nature and unwanted touching of and directed toward" her. She alleges that his conduct created "an intimidating, sexually hostile and offensive work environment" in violation of Title VII of the Civil Rights Act and the Texas Labor Code. She further alleges that Christus Santa Rosa knew or should have known of Dr. Decherd's behavior and character, but failed to protect her.

1

After complaining about Dr. Decherd, Plaintiff alleges that she was given the choice of having to work at the Treeline facility with no assurances about Dr. Decherd's behavior or being transferred to the Stone Oak facility. After she transferred to the Stone Oak facility, she alleges that she suffered a loss of hours.

With regard to Dr. Decherd, Plaintiff alleges that his actions were extreme and outrageous and constituted intentional infliction of emotional distress. Plaintiff and Dr. Decherd have reached a settlement of their dispute, and that claim is no longer pending.

### Christus Santa Rosa's motion for summary judgment

First, Defendant argues that Plaintiff made no complaints of sexual harassment until April 20, 2012. It argues that pursuant to *Faragher*[1], it did not know nor should have known of any harassment prior to April 20. On that date Plaintiff verbally complained to the facility Administrator, Lynne Pinard and the Pre-Op supervisor, Isabella Herrera, that Dr. Decherd was asking her out for drinks, asking her for hugs, talking to her about personal matters, and showed her pornography from his cell phone. Defendant complains that Plaintiff refused to put her verbal grievance into writing and refused an offer to begin an investigation.

Second, Defendant argues it met the second prong of *Faragher* because, once it was aware of the alleged harassment, it took prompt remedial action. Ms. Pinard subsequently informed Dr. Decherd of the verbal complaint and allegedly instructed him to have no further contact with Ms. Sanders.  Christus Santa Rosa also argues that on April 24, Plaintiff was offered the opportunity to remain at the facility, but working on a different floor from Dr. Decherd or transfer to the Stone Oak facility. Defendant argues that Plaintiff voluntarily elected to transfer to the facility, a facility at which she previously worked.

---

[1] Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

2

Next, Defendant argues that Plaintiff suffered no ultimate employment action. Defendant argues that despite receiving a favorable performance evaluation at the Stone Oak facility, Plaintiff voluntarily choose to resign her full-time position and change to a prn or as-needed basis, with fewer hours but a higher rate of pay.

Citing *Hernandez v. Yellow Transportation*[2], *Russell v. Univ. of Texas of Permian Basin*[3], and *Hockman v. Westward Communications*, Defendant also argues that Plaintiff was not subjected to any conduct that was severe or pervasive. Defendant, relying upon *Ramsey v. Henderson*[4], argues that the alleged conduct was "part of workplace horseplay that consisted of mere offensive conduct, which did not unreasonably interfere with [Plaintiff's] work performance."

Finally, Defendant seeks dismissal of some of the sexual harassment allegations raised in Plaintiff's complaint and discovery responses because they were not specifically identified in her charge of discrimination filed at the Texas Workforce Commission. Specifically, Defendant seeks dismissal or the striking of any references of sexual harassment allegedly occurring before February 20, 2012. Alternatively, Defendant seeks dismissal of certain of the alleged acts claiming they are barred by limitations. Defendant argues that Plaintiff was required to file her EEOC charge within 180 days of the alleged harassing acts.

## Summary Judgment Standard

A summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law". Fed.R.Civ.P. 56(c). Under this standard, "[a] factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for

---

[2] 670 F.3d 644 (5th Cir. 2012).
[3] 234 Fed. Appx. 195 (5th Cir. 2007).
[4] 286 F.3d 264 (5th Cir. 2002).

3

the nonmovant and a fact is considered 'material' if it might affect the outcome of the lawsuit under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993).

## Analysis

### A. Plaintiff adequately exhausted her administrative remedies before the TWC

Plaintiff filed a charge of discrimination with the Texas Workforce Commission on August 29, 2012. In the charge she alleged that the discriminatory acts took place between February 20, 2012 and April 20, 2012. She stated that Dr. Decherd repeatedly asked for her cell phone number, "cornered" her in a work utility room and told her that she was sexy, and that she had complained to her supervisor, Lynne Pinard "about these incidents and other incidents, such as Dr. Decherd showing me videos of a horse sodomizing a person, and of a man performing oral sex on a woman...."

On October 11, 2012, Plaintiff's counsel provided the Texas Workforce Commission five pages of a chronology of alleged acts, such as Dr. Decherd repeatedly visiting the nurse station asking where the Plaintiff was, telling Plaintiff she looks like she would be a lot of fun with a few drinks in her, giving Plaintiff unsolicited hugs, taking a picture of her without her knowledge and sending it to his male assistant, using her phone to access her Facebook account and "friending" himself to her page[5], asking her to go out after work hours for drinks, stating that he didn't "understand why a man of [his] position and power [didn't] get propositioned more often", telling Plaintiff he was having an "emotional affair" with someone, and telling her that his "wine date" (someone not his spouse) cancelled on him.

Plaintiffs alleging employment discrimination claims must exhaust administrative remedies before pursuing their claims in federal court. *Taylor v. Books A Million, Inc.*, 296 F.3d

---

[5] Dr. Decherd testified he asked Plaintiff if she wanted to be Facebook friends and that she said "sure."

4

376, 378–79 (5th Cir. 2002). "The primary purpose of an EEOC charge is to provide notice of the charges to the respondent and to activate the voluntary compliance and conciliation functions of the EEOC." *Ajaz v. Continental Airlines*, 156 F.R.D. 145, 147 (S.D. Tex. 1994)(citations omitted). "The charge triggers an investigation by the EEOC so, through a conciliation process, voluntary compliance may be obtained and discriminatory policies and practices eliminated." *Id*. Thus, the "scope of a Title VII suit extends 'as far as, but no further than, the scope of the EEOC investigation could reasonably grow out of the administrative charge.'" *Id*. (*quoting Terrell v. U.S. Pipe & Foundry Co*., 644 F.2d 1112, 1123 (5th Cir. 1981), vacated on other grounds). It is not required "that a Title–VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency"; rather, "the plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger." *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006). A charge of employment discrimination must be construed with the 'utmost liberality.'" *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982) (*citing Terrell v. U.S. Pipe & Foundry Co*., 644 F.2d 1112 (5th Cir.1981)).

In this case Plaintiff provided notice to the TWC that Dr. Decherd was sexually harassing her and that she complained to her supervisor of the alleged conduct. Plaintiff was not required to specifically detail each and every instance of sexually harassing conduct allegedly engaged in by Dr. Decherd. *See Goodwine v. Sodexo, Inc*., 2012 WL 6048667 (S.D. Tex. 2012) (charge could reasonably be expected to trigger an investigation into potential retaliatory motives for the termination). In addition, although Defendant claims it did not receive the October 11, 2012 letter until discovery in this case, Defendant provides no evidence that those acts were not inquired into by the TWC and provides no evidence regarding what, if any, information it

submitted to the TWC in response to the charge filed. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970). Defendant's motion for summary judgment on this issue is denied.

### B. Plaintiff's claims are not barred by limitations

Plaintiff dual filed her charge of discrimination with the Texas Workforce Commission and the Equal Employment Opportunity Commission. Pursuant to 42 U.S.C. § 2000e-5(e)(1), a plaintiff may bring a claim for discrimination under Title VII if she has filed a charge of discrimination within 300 days, if the plaintiff first filed her charge with a state or local agency. *Ikossi-Anastasiou v. Board of Supervisors of Louisiana State Univ.*, 579 F.3d 546, 549 (5th Cir. 2009).

Plaintiff filed her charge of discrimination with the Texas Workforce Commission on August 29, 2012. Accordingly, any allegations dating to November 3, 2011 were timely raised. The Court makes no rulings at this time as to whether any acts allegedly occurring from April 2011 through August 29, 2011 are or are not admissible should this case proceed to trial.[6] Defendant's motion for summary judgment on this issue is denied.

### C. Hostile Work Environment Claim

To establish a prima facie case of hostile-work-environment harassment, a plaintiff must show: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition, or privilege of employment." *Donaldson v. CDB Inc.*, 335 F. App'x 494, 501 (5th Cir. 2009).

"To affect a term, condition, or privilege of employment, the harassing conduct 'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an

---

[6] *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)("For a hostile working environment to be deemed sufficiently hostile, all of the circumstances must be taken into consideration. Discriminatory incidents outside of the filing period may be relevant background information to current discriminatory acts.").

abusive working environment.'" *Aryain v. Wal-Mart Stores of Tex., LP*, 534 F.3d 473, 479 (5th Cir. 2008). The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so". *Id.* at 479 (*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *Donaldson*, 335 F. App'x at 501.

Determining whether a hostile-work environment exists takes into account the totality of the circumstances, including such factors as: (1) the frequency of the conduct; (2) its severity; (3) the degree to which the conduct is physically threatening or humiliating; and (4) the degree to which the conduct unreasonably interferes with an employee's work performance. *Donaldson*, 335 F. App'x at 501-502.

In response to a hostile-work-environment claim, a defendant may assert the *Ellerth*[7]/*Faragher* affirmative defense. *Id.* at 502.[8] Under *Ellerth*/*Faragher*, an employer may raise an affirmative defense to liability, by showing: (1) the employer exercised reasonable care to prevent and correct promptly any sexually-harassing behavior; and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm or otherwise. *See Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807; *see also Casiano v. AT & T Corp.*, 213 F.3d 278, 283-84 (5th Cir. 2000).

---

[7] *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).
[8] Both parties spend considerable energy in arguing whether Dr. Dechert was a supervisor or merely an independent contractor who worked at the facility. Dr. Dechert was a surgeon with admitting privileges at the facility. He also owned a small fraction of the Defendant facility. It is undisputed that CHRISTUS is the majority owner and ran the facility. Dr. Decherd could provide input to CHRISTUS as to the work abilities of its employees, but otherwise had no authority to hire or fire its employees. The Court does not need to address this issue to dispose of the issues in this motion. Even assuming Dr. Dechert was a non-employee, an "employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action." 29 CFR § 1604.11(e).

7

### 1.  Whether the acts alleged were severe or pervasive

First, it should be noted that Dr. Decherd admitted to showing the Plaintiff a video clip of a horse sodomizing a woman.  Plaintiff also has either testified or submitted an affidavit alleging that shortly after April 2011, Dr. Decherd frequently sought her out, gave her hugs, invited her for drinks, took a photo of her and showed it to his subordinate, used her cell phone and added him to her Facebook "friends," and showed her a picture of a man performing oral sex on a woman and told her that he changed his mind about oral sex.  Analyzing the alleged harassment under the requisite totality of the circumstances, a material fact issue exists on whether the comments and actions were "severe or pervasive."

Defendant argues that Dr. Decherd did not follow the Plaintiff into a utility room, but rather he was invited into the room by Plaintiff.  That is a fact issue for a jury to resolve.  Likewise, Defendant argues that once in the utility room, Plaintiff was free to leave and Plaintiff was not physically accosted or kissed by Dr. Decherd.  "Physical touching, [however,] is not a requirement in a hostile-work-environment claim, so long as the evidence establishes conduct that is so severe or pervasive as to affect a term, condition, or privilege of employment." *Donaldson*, 335 F. App'x at 502.  Further, Defendant implies that because Plaintiff continued working her shifts after being allegedly harassed, that precludes severity as a matter of law.  The Court is not aware of any case that supports this contention.  Otherwise, Defendant explored during Plaintiff's deposition that she sometimes spoke with Dr. Decherd and on one occasion sought his advice as a plastic surgeon regarding her breast implants.  Defendant implies from these excerpts that the alleged conduct was not extreme and was in fact invited by Plaintiff.  Indeed, Defendant's attorney questioned whether Plaintiff was flirting with Dr. Decherd; whether Plaintiff "take[s] any responsibility for how Michael Decherd acted around you"; and

whether Plaintiff "brought it on at all." Defendant's aggressive defense notwithstanding, genuine issues of material fact exist.[9] The above allegations are nothing like those raised in *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644 (5th Cir. 2012)("Hernandez was called a racially derogatory term on one occasion and once saw a poster or letter that was derogatory about Hispanics. Trevino once heard Mexicans referred to in a derogatory manner over a company radio and had seen a discriminatory posting or drawing. The district court found these incidents were "plainly offensive to a Hispanic person," but they could not support a hostile work environment claim because they were so few and occurred over more than a decade of employment.").

Defendant also relies upon *Russell v. University of Texas of Permian Basin*, 234 F. App'x 195 (5th Cir. 2007) and *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 327–28 (5th Cir. 2004) for the proposition that the alleged acts by Dr. Dechert are insufficient to establish severe or pervasive harassment. The Court concedes that these cases are more difficult to distinguish than *Hernandez*.

In *Russell*, the Fifth Circuit concluded that the alleged harasser's (Dr. Watson) conduct was neither severe nor pervasive. Dr. Russell alleged that, on one occasion each, Dr. Watson rubbed the side of her hand and her thigh; that Dr. Watson twice intimated that she wanted to move to New York City with Dr. Russell; that Dr. Watson once stated that she would not mind watching a movie in bed with Dr. Russell; and that Dr. Watson called her "honey" or "babe" on numerous occasions. In *Hockman*, the Fifth Circuit concluded that the plaintiff "could not establish a hostile work environment based on the facts that the alleged harasser, among other things,

---

[9] In addition to the above, Defense counsel argues that there "is nothing sexual or objectively offensive about being asked for your cell phone number," there "is nothing sexual or objectively offensive about being told that someone's wine date cancelled," and there "is nothing sexual or objectively offensive about being followed into a room and referred to as sexy." Taking into account the totality of the circumstances, this Court concludes that all the statements raise a genuine issue of material fact as to whether harassment occurred and its severity or pervasiveness.

commented about another employee's body, slapped her on the behind with a newspaper, grabbed or brushed against her breast and behind, and once attempted to kiss her."

Although not specifically stated by the Fifth Circuit, it appears the Court measures the number of offensive acts that take place during a certain period to determine pervasiveness. It does so because the harassment must consist of more than "simple teasing, offhand comments, and isolated incidents (unless extremely serious)." *Faragher*, 524 U.S. at 788. The Fifth Circuit, however, has recently called into doubt its prior holding in *Hockman*. In *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396 (5th Cir. 2013), the Court concluded that the "sniffing and hovering over a woman, by two men, in a small, confined space could be viewed by a reasonable jury as harassment based on Royal's sex." *Id*. at 402. This Court finds that the conduct complained of in this case more resembles *Royal* in terms of both severity or pervasiveness and Plaintiff has shown a genuine dispute of material fact. Defendant's motion for summary judgment on this issue is denied.

**2. Whether the employer exercised reasonable care to prevent and correct promptly any sexually-harassing behavior**

Defendant argues that it is entitled to the affirmative defense as a matter of law because it allegedly promptly addressed Plaintiff's complaint. Defendant promulgated an anti-harassment policy and it is undisputed that Plaintiff was aware of that policy. Nevertheless, Plaintiff has testified that because of the pervasiveness of Dr. Decherd's behavior, other employees, including Isabelle Herrera, her supervisor, were aware of the harassing conduct. Plaintiff also testified that she verbally complained to Ms. Herrera in November 2011. Defendant denies that this reporting took place. Plaintiff testified that Ms. Herrera witnessed some of the alleged acts for herself. It is undisputed that Ms. Herrera never reported any harassing conduct, although pursuant to the

anti-harassment policy she was obligated to do so. A genuine issue of material fact exists whether the employer exercised reasonable care to prevent any sexually-harassing behavior.

In addition, a genuine issue of material fact exists whether the employer exercised reasonable care to correct promptly any sexually-harassing behavior. Ms. Pinard alleges that once she received Plaintiff's verbal complaint on April 20, 2012, she "took action immediately to ensure that Ms. Sanders would have no contact with Dr. Decherd and verbally reprimanded him for unprofessional conduct. Ms. Sanders was scheduled to work on a different floor than Dr. Decherd on her next shift, April 23, 2012. On April 24, 2012, Ms. Sanders was given the option to either continue working on the third floor where she would have no contact with Dr. Decherd, or transfer to the PASC at Stone Oak…."

Dr. Decherd, however, testified that Ms. Pinard approached him about apologizing to the Plaintiff, but that he "really [didn't] believe that … [he had] done anything, but if she's felt uncomfortable, then [he was] happy to apologize for making her uncomfortable." He also testified that he was told by management "to behave in a manner that would not lead to any complaints…." Plaintiff testified that because she was provided no assurances about how no contact with Dr. Decherd was going to be enforced and Dr. Decherd was not disciplined in any manner, she had no choice but to accept the transfer to the Stone Oak facility. A genuine issue of material fact exists as to whether the employer exercised reasonable care to correct promptly any sexually-harassing behavior.

### 3. Tangible employment action

It is uncertain what Defendant is arguing on this issue. An employer can raise an affirmative defense to liability or damages, so long as it can establish that the supervisor's harassment did not culminate in a "tangible employment action" against the employee. *Faragher*, 524 U.S. 775.

11

Defendant argues that Plaintiff suffered no loss of salary or benefits in this case. To the extent that Defendant is arguing that it is therefore entitled to raise an affirmative defense, that is a correct statement of the law. To the extent that Defendant is arguing that as a matter of law it is entitled to summary judgment because Plaintiff has suffered no damages in this case, that is an incorrect statement of the law. Although it is likely that Plaintiff may not be entitled to any lost wages in this case because she voluntarily quit her full-time employment and assumed a prn or as needed basis for reasons entirely unrelated to this case, Plaintiff may nevertheless be entitled to a jury question on whether she should be awarded compensatory damages for emotional pain or mental anguish.

## Conclusion

For the reasons stated above, Defendant's motion for summary judgment is denied.

SIGNED this 17th day of January, 2014.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE